The first case today is number 231815, United States v. Eddie Colon-Vazquez. Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning, Mayor. Please the court, Mauricio Hernandez-Arroyo for appellant Eddie Colon-Vazquez. I'll request two minutes for rebuttal. Could you just move your mic a little closer just so we can hear you better? Thank you. Great. I will request two minutes. You requested two minutes? Yes, you may. Thank you. The issue on appeal is whether or not the district court's 23% upward variances sentence of 48 months was procedurally and substantially unreasonable for Colon, who is a 23-year-old man with strong family ties, no prior arrest, and some history of work experiences, standard reviews for unreasonableness to abuse of discretion. The government conceded substantially unreasonableness based upon counsel's objections at sentencing, opening brief of U.S.A. of 17. So we request that based on the totality of the circumstances and the facts in this case, we request that the judge ... Okay, but totality of the circumstances is not the test for any possible reversal. So where's the either procedural and or the substantive error that Judge Bezosa must have committed? Okay. So just to finish on that, I thought we are asking for a reminder. To answer your question, we wanted to go to the citation in the sentencing transcript in this case and cite the two citations regarding the judge's reliance on the defendant, the in that the statements by the appellant that he was persuaded to go into this type of activity by his friends, the judge cited two citations after going through the list of the two arms, the rifle, the ammunition, the five magazines, and the clothing. The judge goes to and states that all of these are violations of matters that have to do with either drug transactions or with violent crime on the island, said he wanted to make me like his friends. Well, his friends, if his friends had that type of weaponry with them, they are, they would also be probably involved in drug trafficking and violent crimes. That said, docket entry 3112, the court further on goes to cite a number of first circuit state court murder rates comparable to Puerto Rico. I have read a lot of cases. I have not seen that before. But he makes references to the high crime rate that needs to have a case specific nexus of criminal action. One of the things that he definitely, certainly focused was, he said this gentleman, Colón Vázquez, possessed not only two machine guns, but also a Smith and Wesson model MP15 rifle and then all the other items that were seized. So this is not the run of the mill case where somebody has just one firearm, it's not even been modified, maybe obliterated serial number. He's got two machine guns and he's got also the Smith and Wesson. So isn't that sufficient when, and then he's putting everything else into context. Well, putting everything else into context is very little, if anything, regarding the individual characteristics. And he was mindful of, because there's a lot of discussion, this is two months before Flores-Gonzalez. So the court spends a lot of time citing case law, being mindful of concurring opinions and saying things what he cannot do, based on precedent and the cases before him, and what he could do. And he does go on to say that all of these actions by these unnamed acquaintances led him to possess the pistol, his rifle, not really something needed, and a hoodie, and two ski masks, and talks about the assault, the lethalness of the assault rifles and machine guns. He did mention that he cannot just rely on the community characteristics, but at the same time did not spend a lot of time on the specifics of the characteristics of the offender. Although he does go into a number, but I don't believe this could be a numerical. He says he looked at the PSR. He looked at the sentencing memos. He's familiar with everything, so he did consider everything. He just did not state it. All he stated was, like he does in a lot of cases, right? This is the same type of case with guns. If you have three guns, you're going to have more ammunition. It cannot be a numerical counting of what the amount of ammunition is, because three arms are going to be more than just one arm, two arms. I thought one way to understand our precedent in this area is that the general concern about crime in Puerto Rico, and firearms-related crime in particular, becomes more relevant the more relevant it seems to the specific conduct of the defendant. And the mere possession of the machine gun itself might not draw that linkage. But here, when you have multiple firearms plus the ammunition, I believe, and then the a fair inference that we're not dealing just with your run-of-the-mill person with a machine gun. Well, not only does he use his own statement to make that, we believe, unreasonable inference of what is in his statement. Why is that an unreasonable inference? Because the statement said he wants to be like his friends or that he was living his life as he was in a movie. Isn't that in the context of him saying, at least one way to read it would be, in light of what was recovered from this person, which includes the ski masks, which I think are – is the record show where the ski masks are approximate to the other materials? No. This was the report. I didn't get into it. But this was a confidential report of a stolen car. He was arrested without incident. And that's all we know because these were the materials found in the car. In the car. Yes. In the car. There's no – Ski masks with weapons and ammunition. Correct. Which I would say is – wouldn't you think that's kind of suspicious? Well, it can be. I think by itself is not enough when you look at this characteristics of this defendant in the case file. Because the way I understood the comment about the friends in the district court's treatment of it was by way of responding to a defense being raised by the defendant. I didn't read it to be saying, because you have those friends, I'm giving you a higher sentence. I believe that was also an unreasonable inference. The objections were very short. Both sides. One argued – we argued 18 months. Government argued 24 months. This was double the requested by the government. And we know that the court was very mindful because this decision – this district court consideration was two months before the Flores-Gonzalez in-bank decision. So there's a lot of discussion of cases and in mindfulness of what he can't do. Talking about community characteristics and what he could do. We don't think that's sufficient considering the PSR undisputed facts where this is someone he did mention has no prior arrest, no juvenile adjudications. He did have a medical license. Excuse me, counsel, but he got full credit for that through criminal history category one, right? Right. Could I ask you, could I ask you, could I ask you, please, would – I know that Judge Besosa did not just do a straight Kimbrough, I disagree with the guidelines as a matter of policy here. Is there any reason he could not just say, I think the guidelines are not sufficiently strict in dealing with machine guns? You're correct. This is not a Kimbrough case. Is it correct that the judge could simply invoke a Kimbrough policy disagreement with the guidelines for machine guns? He could if he did not in this case. Thank you. Let me also ask you, you mentioned that Judge Besosa considered his acceptance of responsibility to his detriment, but the three – minus three points were deducted from the total offense level. Everything's contemplated by the guidelines, everything's contemplated by the, you know, both his possessions of the guns. No, but you said that he, you know, when he accepted responsibility, he explained that he was led into this because of the other individuals, and you say Judge Besosa used that to his detriment, but he still got the credit for accepting responsibility. He did, but using his own statements against him in the way that he did, I don't think was reasonable and proper. Is a district judge required to believe what he's told in elocution? Of course not. Of course not. He can make reference to it, which is what he did, but there was very, very little concerning this person's characterization and his – Let me also ask, why is this substantively unreasonable? I believe here the maximum is ten years, if I'm not mistaken, or it could be higher, but there's cases from the circuit where the district judge explains in similar detail and variances that are even higher have been upheld, you know, multiple times. Other cases, there's no explanation, as we know, have been reversed, but why does this – why is this substantively unreasonable when you look at the possible sentencing ranges? Are you saying that it's a matter of law with two machine guns and another pistol and the ammo and the ski mask and just, you know, for the record, nobody skis here in Puerto Rico, it doesn't snow, but isn't this a, you know, substantively reasonable sentence? Again, we're not here to say we would have sentenced him to less or more, but from the standard of review, why is the sentence, you know – So when you look at this case in total, and you look at who this defendant is, 23-year-old with no prior arrests, and – There's been many prior defendants whose sentences have been affirmed have been first-time offenders, so just for being a first-time offender doesn't mean you automatically get a break from –  There's no impediment for getting a variance for being a first-time offender. So the judge didn't spend a lot of time – he spent a lot of time citing cases. He spent a lot of time what he couldn't do, and what he referred to was the amounts. And so when you have – these cases should not fall on the amount of ammunition and the type of guns which – firearms are covered by the guidelines, and it cannot be those numerical comparisons with the other cases. At that time, it was the issue when the Flores case was in Bank, there was also Rivera-Rios, and that was one of the issues. So the judge, I believe what he's doing, he's trying to explain, these are the cases that go one way, these are the cases that go the other way, and I'm trying to fit in and explain why that variance should be sustained, and that's what he's doing. Well we rest on the – Time is up. Time is up. Thank you. Okay. Thank you, counsel. Attorney for Appley, please come up and introduce yourself on the record. Good morning, Chief Judge Barron. May it please the Court, Greg Conner for the United States. When the District Court imposed its sentence, it provided an explanation for the upward variance based on factors that this Court has approved of previously. The sentence was procedurally and substantively reasonable, so we're asking that this Court affirm. It's at pages 32 to 43 of the appendix that the District Court explains why it's imposing an upward variance. Those reasons included generally the weaponry that Colon possessed, the circumstances of his arrest, and given those aggravating factors, the District Court permissibly went into its concern regarding the community and the high rates of gun violence. Let me ask you, what was the maximum possible sentence? It's 10 years here, I believe, correct? That's correct. So – When you look at 48, obviously it's higher than the government recommended, but when you look at 48 versus a maximum of 120, the judge, you know, could have gone higher. He didn't. He considered all the overall factors. That's correct. And before I get into more specifics of this particular offender, we submitted a 28-J letter that I think makes Judge Helpe's point even easier. It's the Mercado Canizares case. Same guideline range, same maximum, and same upward variance imposed. And what the First Circuit said in that case is that there were a variety of reasons the District Court gave in Mercado Canizares, but because the amount of ammunition was independently sufficient to justify the variance, it didn't need to do an analysis about the remaining justifications. So we think that Mercado – the Mercado case makes this case a relatively simple appeal. What do you have to say what Mr. Hernandez-Arroyo has argued? He's said that by defendant, appellant accepting responsibility, the judge took that explanation to his detriment and went upwards. There's certainly nothing wrong or prohibited – the District Court wasn't prohibited from taking his words – basically admission that he was trying to live his life like a gangster movie. He was trying to be like his friends and basically got pressured into this sort of behavior. There's nothing wrong with the District Court using that concession and making rational inferences. You're in a stolen vehicle with a lot of weaponry, three firearms, two of which are automatic, over 200 rounds of ammunition, ski masks, which as the panel said, there's no reason to have in Puerto Rico other than to hide your identity. It's a rational inference for the District Court to say these two were up to no good. And let me ask, within these circumstances of what you just described, is it permissible then for Judge Pesosa to have considered the community factors and compare – I assume he compared Puerto Rico to Massachusetts, New Hampshire, what the rate of murder or gun violence is. Is that permissible within these circumstances, the way he did it? It is, and I will note that there was no objection on the consideration of the community factors, so it would be forfeited, subject to plain error, and plain error isn't brief, so the point is waived in our view. The precedent does encourage judges to consider things like community violence relative to the national average, which is not exactly what he did. Again, there's no objection to that, but because the rest of the Northeast is relatively similar to the statistics for the rest of the country, if anything, it would be a harmless error in a preserved case. Mr. Conner, this is my second visit with the First Circuit here in San Juan, and this is one of actually a surprising number of machine gun sentences from Judge Pesosa that I've sat on, and the sentences are pretty consistent across individual characteristics. There's some case law from this court, obviously you cite the Mercado case recently, where the focus is on, for example, the number of rounds of ammunition found. I have to say, I'm a little nervous about the case law moving further in the direction of trying to decide is 50 enough for an upward variance, 30, 40 rounds, 100 rounds, I worry about that. Is there a reason not to simply say I disagree with the guidelines as too lenient in machine gun cases, as Judge Jackson did in the Kimbrough case with respect to crack and powder cocaine? I think this specific sentencing judge has made that, made his views on that known pretty well. But he's never made a Kimbrough type determination. He's always, and let me say my experience, prior experience in the district was these variances most of the time until Riverao and Rios had been upheld, so I believe the judges don't go into Kimbrough because they can do it through a variance. But I think the question, similar to Judge Hamilton's, is would this be better justified, maybe moving forward, if the judges can say in Puerto Rico, XYZ, these are the factors, and Kimbrough analysis allows us to do this? Would that be better than just the mere variance? I loathe to say what's better. I think because there are some open questions in the precedent, sentencing judges are taking a belt and suspenders approach and giving multiple justifications for an upward variance. And again, I would take it back to the Mercado case where there were several reasons and this court said that a lower amount of ammunition, fewer magazines, fewer high capacity could independently justify the same variance from the same range. You're not exactly the ideal recipient of these questions, but they're obviously of interest to us. I mean, one difficulty with a Kimbrough analysis is I understand the source of concern in these sentences that we see is it's not a hostility to the guideline range in general, but as applied in Puerto Rico, which raises its own complicated questions about how Kimbrough applies when it's based on a characteristic as opposed to the guideline as a whole, which I think was the classic Kimbrough example. So that may be one. I don't think there's anything to indicate that Judge Pesos is of the view that the guideline range is wrong in places that have a different experience with crime than Puerto Rico does. I think that's probably right. I will say it's not just him. By last count, six of our district court judges have expressed their concern. Well, in our case law, it's clear that that is a relevant consideration. The question is just as we've been saying, I think, for decades that relying on community characteristics unmoored from the individual characteristics of the defendant goes too far. And obviously, our circuit's not come to rest on whether that precedent captures, that formulation captures the right limitations on that. Sure. And I'll just note, to take it back to Mr. Colon, that the sentencing judge recognized he had to tie his... He's quite express in that, yeah. He has a lot of experience in navigating this case law, yes. So just to conclude, we believe that on this record, the district court judge sufficiently explained his decision to vary from the guidelines. Can I ask you, counsel, I thought I saw conflicting points in the briefs, but which of the two guns were automatic? The... I'm actually forgetting which one of the pistols... It was one of the pistols and the Smith & Wesson long gun. Okay. But the long gun was one of them. Yeah, I think it was the Glock. I'll have to double check and I can confirm. I've got the PSR. Thank you. Okay. All right. Thank you. Thank you. Thank you, counsel. Will attorney for Appellant please come up and reintroduce yourself on the record? You have a two-minute rebuttal. Mauricio Hernandez-Arroyo, and I'll be real brief. Something I didn't have time to do in my opening, but in terms of the reference to the supplemental authority for 28J, there was a second letter submitted making reference to Morales-Velez and making a couple of points that when we didn't bring the court's attention, that in briefs were similar and similar arguments, including a lot of citations and legal authority on guns and, excuse me, ammunition. Those two cases, Morales-Velez, are substantially fundamentally different in terms of the statutory regimes. That case was a possession in furtherance of drug. Here there are no drugs. That was under the analysis of 2K2.4. Ours is under 2K2.1, and there was no drugs here. So we didn't bring that attention, but neither party cited those records. And in fact, for the record, the collaboration between the public defender, the CJA panel, not only in the district but in the circuit, is very strong under the leadership of Rachel Brill. We also have had trainings with the circuit on appeals. The U.S. District Court attorneys participate in those trainings. And so, yes, we did cooperate with Attorney Adrian Ebert. We had oral arguments the same day under the same panel on March. The decisions came down in May and June, respectively. We shared notes on petition and bonk. They went forward. We did not. But in fact, to answer that, allegations that the citations of fee, the reply brief had to do, and they're incited in our authorities of six articles and references regarding to guns or ammunition with guns, because to have – I'm still waiting to see a gun case without any ammunition in terms of that. And we rest on the briefs. Thank you. Thank you. Thank you, counsel. That concludes arguments in this case.